Filed 8/31/23  In re Autumn C. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re AUTUMN C., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>H.J.,<br><br>Defendant and Appellant. | F085961<br><br>(Super. Ct. No. JD142011-00)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Mark Tomlinson, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)

Lelah S. Fisher, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Alexandria M. Ottoman, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Levy, Acting P. J., Detjen, J. and Snauffer, J.

Appellant H.J. (mother) is the mother of the two-year-old child, Autumn C. (the child), who is the subject of this dependency case. Mother challenges the juvenile court's order terminating her parental rights at a Welfare and Institutions Code[1] section 366.26 hearing. Mother's sole claim is that the juvenile court and Kern County Department of Human Services (department) failed to comply with the duty of further inquiry under the Indian Child Welfare Act (ICWA). The department concedes that a conditional reversal is required to ensure that proper inquiry is conducted pursuant to ICWA's requirements. We agree with the parties and conditionally reverse the juvenile court's order terminating parental rights and remand for proceedings to ensure ICWA compliance.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In April 2021, the child was taken into protective custody as a result of mother's substance abuse and mental health problems. The department filed a petition alleging the child was described by section 300, subdivision (b)(1). During the department's initial inquiry, mother reported having "Blackfoot" ancestry. The social worker documented this inquiry on the Indian Child Inquiry Attachment (ICWA-010(A)) form, which was attached to the petition.

At the initial detention hearing held on May 4, 2021, mother was present and appointed counsel. The juvenile court directly inquired of mother regarding possible Indian ancestry in her family, and mother believed she had "Blackfoot" ancestry through her father's family. The maternal grandfather was identified as the person with the most information regarding this ancestry, and mother was unsure if other family members had additional information. She believed there were family members enrolled in an Indian tribe in the past, but the maternal grandfather had that type of information.

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]     The sole issue on appeal concerns ICWA; therefore, we primarily restrict our facts to those bearing on that issue.

The juvenile court reserved making an ICWA finding as to mother and directed the department to follow up with the maternal grandfather to see if he had any additional information regarding the claim of "Blackfoot" ancestry. At a continued detention hearing on May 6, 2021, the child's father, Daniel F. (father), appeared and denied having knowledge of Indian ancestry in his family. The court ordered the child detained from the physical custody of the mother and set a combined jurisdiction and disposition hearing for May 20, 2021.

The department's jurisdiction report, dated May 17, 2021, recommended that the juvenile court find the allegations in the petition true. The ICWA status section of the report detailed mother's initial reporting of Indian ancestry with the Blackfeet tribe. A request was submitted for a paralegal to send notice for mother's claim of Indian ancestry, and the department was in the process of providing notice to the Blackfeet tribe. The report prepared for the disposition hearing, dated May 19, 2021, recommended the child remain in out-of-home placement with family reunification services provided to mother. The child was placed in a resource family home and there were no pending relative applications for placement.

The ICWA status section of the disposition report indicated that a department paralegal contacted mother and the maternal grandfather to discuss the claim of Blackfeet ancestry. There were no family members enrolled with a tribe, and the mother and maternal grandfather were unsure about having any Indian ancestry. Mother stated the possible ancestry was passed down from her grandfather, and the maternal grandfather described the possible ancestry as " 'family folklore.' " Mother intended to do an "[a]ncestry test" to see if she had any Indian ancestry. Based upon these statements, the department concluded that the family had no Indian ancestry and further inquiry was not necessary.

On May 4, 2021, the paternal grandmother informed the social worker that she was interested in placement of the child over a phone conversation. Father also

participated in the phone call, and there was no indication that the social worker asked the paternal grandmother about Indian ancestry. A family finding social worker was assigned to locate family members of the child, and the social worker was able to identify 21 of the child's maternal relatives. Fifteen of the relatives were sent notification letters on May 7, 2021. Mother provided the names of her four siblings, and three of the siblings lived in California.

The maternal grandfather informed the family finding social worker that he would not be able to apply for placement of the child because mother lived with him. A voice message was left for the maternal grandmother by the family finding social worker. The child's maternal aunt, M.F., provided her information to be considered for placement of the child, but mother did not want family members to apply for placement of the child. The documentation in the report did not include a discussion of Indian ancestry with M.F.

At the jurisdiction hearing held on June 4, 2021, the juvenile court found the allegations in the petition true, determined ICWA was not applicable, and set a contested disposition hearing. On September 2, 2021, the court held a contested disposition hearing and considered evidence presented by mother. The court ordered the child removed from mother's physical custody, and mother and father were to be provided family reunification services. A six-month review hearing was set for March 2, 2022. Mother appealed the disposition order, and we affirmed the order on July 19, 2022, in case No. F083281. (*In re A.C.* (July 19, 2022, F083281 [nonpub. opn.].).)

The six-month status review report, dated March 1, 2022, recommended that mother's family reunification services be continued and father's family reunification services be terminated. The ICWA status section of the report indicated the juvenile court's previous findings that ICWA was not applicable to the mother and father without additional information. The child's maternal cousin was approved for placement in September 2021, but the decision was made for the child to remain in her current

4.

placement. At the six-month review hearing, the court continued family reunification services for mother, and it set a 12-month review hearing for June 3, 2022.

The department's report for the 12-month review hearing recommended that mother's family reunification services be continued. The ICWA status section of the report made note of previous ICWA findings without additional information. A supplemental report, dated June 21, 2022, included information from the department's meeting with paternal relatives that recently cleared for placement of the child. The child's paternal great-aunt, paternal uncle, and paternal aunt were present for the meeting, and the decision was made to maintain the child in her current placement. In July 2022, the social worker communicated with M.F. and mother's brother-in-law about mother's prescription drug abuse. There is no documentation that Indian ancestry was discussed with these paternal or maternal family members during their conversations with the department. The juvenile court continued mother's family reunification services and set an 18-month review hearing for October 28, 2022.

The department recommended that mother's family reunification services be terminated in its 18-month review report. The social worker reiterated previous statements about the juvenile court's prior ICWA findings in the report. M.F. spoke with the social worker and provided information about mother's recent arrest. At the 18-month review hearing, the court terminated mother's family reunification services and set a section 366.26 hearing for February 27, 2023.

The report for the section 366.26 hearing recommended that parental rights of mother and father be terminated and a plan of adoption be selected. The child remained in the same resource family home since her removal in April 2021. The report stated the previous findings that ICWA was not applicable, and a department paralegal was assigned to complete an ICWA inquiry on December 1, 2022.

The department submitted a declaration of its paralegal regarding the ICWA inquiry on February 24, 2023. The paralegal obtained family and ancestry information

from "Family Findings."  Mother and the maternal grandmother both reported possible Indian ancestry with the Cherokee and Blackfeet tribes.  Father reported possible Indian ancestry with the Cherokee Nation, and the paternal grandmother, paternal great-aunt, and three paternal aunts reported "tribal affiliation" with the Cherokee Nation.  The paralegal was provided enrollment numbers for the paternal great-great-grandfather, paternal great-grandfather, and a paternal aunt.

The department sent formal notice pursuant to ICWA to three Cherokee tribes and the Blackfeet Tribe of Montana.  The Cherokee Nation informed the department by letter that the child's paternal great-grandfather was located in their tribal records, but it would not intervene unless the child or eligible parent received citizenship in the tribe.  The United Keetoowah Band of Cherokee Indians and Eastern Band of Cherokee Indians both sent responses indicating the child was neither a member nor eligible for membership in their tribes.  No response was received by the Blackfeet Tribe.

Mother failed to appear for the section 366.26 hearing held on February 27, 2023.  The juvenile court found ICWA was not applicable, and it terminated the parental rights of mother and father.  On March 22, 2023, mother filed a timely notice of appeal.

## DISCUSSION

Mother contends the juvenile court's finding that ICWA did not apply was not supported by substantial evidence because the department failed to comply with its duty of further inquiry.  Mother argues the record is insufficient to support the court's ICWA finding because the information shared with the tribes was missing details that could have been obtained from mother's extended family members.

### A.     *Legal Principles*

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family.  (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1

6.

Cal.5th 1, 7–8.) In any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe … have a right to intervene" (25 U.S.C. § 1911(c)), and may petition the court to invalidate any foster care placement of an Indian child made in violation of ICWA (25 U.S.C. § 1914; see § 224.2, subd. (e)). An "Indian child" is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized Indian tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].)

In every dependency proceeding, the department and the juvenile court have an "affirmative and continuing duty to inquire whether a child is or may be an Indian child .…" (Cal. Rules of Court, rule 5.481(a); see also § 224.2, subd. (a); *In re W.B.* (2012) 55 Cal.4th 30, 53; *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165.) The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

The initial duty to inquire arises at the referral stage when the reporting party is asked whether it has "any information that the child may be an Indian child." (§ 224.2, subd. (a).) Once a child is received into temporary custody, the initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (§§ 224.2, subd. (b), 306, subd. (b).) The juvenile court has a duty at the first appearance of each parent to ask whether he or she "knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).) The court must also require each parent to complete form ICWA-020. (Cal. Rules of Court, rule 5.481(a)(2)(C).)

Next, a duty of further inquiry arises when the department or the juvenile court has "reason to believe" the proceedings involve an Indian child but "does not have sufficient

information to determine that there is reason to know that the child is an Indian child ….." (§ 224.2, subd. (e).) As recently clarified by the Legislature, a "reason to believe" exists when the juvenile court or department "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (*Id*., subd. (e)(1).)

If there is a reason to believe an Indian child is involved, the juvenile court or the department "shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e).) Further inquiry includes, but is not limited to, "[i]nterviewing the parents, Indian custodian, and extended family members," and contacting the Bureau of Indian Affairs, the State Department of Social Services, and the tribes and any other person who may have information. (§ 224.2, subd. (e)(2)(A)–(C).)

The final duty component arises when the court or department has "reason to know" the child is an Indian child. (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 567.) A "reason to know" exists if one of the following circumstances is present: "(1) A person having an interest in the child … informs the court that the child is an Indian child[;] [¶] (2) The residence … of the child [or] the child's parents … is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding … informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child … gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[;] [or] [¶] (6) The court is informed that either parent or the child possess[es] an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d)(1)−(6).)

If the juvenile court makes a finding that proper and adequate further inquiry and due diligence have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that ICWA does not apply, subject to reversal if the court subsequently receives information providing reason to believe the child is an

8.

Indian child. If the court receives such information, it must direct the social worker or probation officer to conduct further inquiry. (§ 224.2, subd. (i)(2).)

**B.    *Standard of Review***

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' " (*In re K.H.* (2022) 84 Cal.App.5th 566, 601 (*K.H.*), quoting § 224.2, subd. (i)(2).) First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*Ibid.*) Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence ….' " (*Ibid.*)

Under the substantial evidence standard, " 'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.] The determinations should "be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." ' [Citations.] The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' [citation], and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' [citation]. '[I]f a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601.)

The juvenile court's finding on the second element, however, "is ultimately discretionary because it requires the juvenile court to 'engage in a delicate balancing of' various factors in assessing whether the [department's] inquiry was proper and adequate within the context of ICWA and California law, and whether the [department] acted with due diligence." (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021) 11

9.

Cal.5th 614, 640.) Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion. (*K.H.*, at p. 601.)

" 'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " [Citation.] But " ' "[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court[.]" ' " [Citations.] [¶] While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 602.)

"Review of the juvenile court's findings under the foregoing standards is deferential, but ' "an appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law." ' [Citations.] Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied." (*K.H.*, *supra*, 84 Cal.App.5th at p. 602.)

### C.    *Analysis*

### *Adequacy of Further Inquiry*

In the present case, mother initially informed the department of her belief that she had "Blackfoot" ancestry through the child's maternal grandfather. After the department made an inquiry of the maternal grandfather, it was determined that this claim was based on " 'family folklore' " and no further inquiry was necessary. Father denied any knowledge of Indian ancestry during the department's initial inquiry. During the family reunification period, the department had contact with various extended family members, including: the paternal grandmother, maternal grandmother, maternal aunt, maternal cousin, paternal great-aunt, and paternal aunt. There was no documentation of an inquiry regarding Indian ancestry for any of these relatives during that period.

10.

On the eve of the section 366.26 hearing, the department conducted an additional inquiry into the child's ancestry. According to the declaration of the department's paralegal, the child's mother and maternal grandmother reported possible Indian ancestry with the Cherokee and Blackfeet tribes. In addition, the paternal grandmother, paternal great-aunt, and three paternal aunts reported tribal affiliation with the Cherokee Nation. The department provided information on the child's lineal ancestors to the Cherokee and Blackfeet tribes through a formal notice pursuant to ICWA.

The information provided to the tribes provided the name, current address, and date of birth for the child's maternal grandmother. The department also included the names, current addresses, and dates of birth for the parents of the maternal grandmother (the maternal great-grandparents). The notice did not include the maternal grandmother and maternal great-grandparents former addresses or places of birth, and it also omitted the maternal great-grandmother's date and place of death.

At the conclusion of the department's further inquiry, it was determined that the child's paternal great-grandfather was a member of the Cherokee Nation, but the child was not an Indian child because neither her nor her parents were members of the tribe. The United Keetoowah Band of Cherokee Indians and the Eastern Band of Cherokee Indians indicated that the child was neither a member nor eligible for membership in the tribes based upon the information provided by the department, and the Blackfeet tribe did not respond to the department's notice.

There is evidence that the child's maternal aunt and cousin, the daughter and grandchild of the maternal grandmother were both available for the department to interview during the proceedings. The department's declaration regarding its ICWA inquiry reflected the maternal grandmother's reporting of Indian ancestry, which is indicative of a direct conversation between the department and maternal grandmother regarding Indian ancestry. However, the department's reports do not indicate that the family's Indian ancestry was discussed with the maternal aunt and cousin. Accordingly,

11.

we will accept the department's concession that it failed in its duty of further inquiry based upon the absence of any interviews with available maternal relatives regarding the child's possible Indian ancestry.

The juvenile court, at a minimum, should have ensured that the department attempted to contact the child's maternal aunt and cousin regarding mother's possible Indian ancestry. Under ICWA, the term " 'extended family member' " is "defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2).) The maternal aunt and cousin were readily available to the department given the maternal cousin's request for placement and multiple conversations with the maternal aunt during the proceedings. The department should have made a meaningful effort to contact the maternal aunt and cousin and attempt to gather the necessary information to assist them in determining whether there was a reason to know the child was an Indian child. Therefore, we conclude the department failed in its duty of further inquiry and will consider whether that error was prejudicial.

### *Prejudicial Error*

The appellate courts are divided on what showing of prejudice warrants reversal for ICWA errors stemming from an initial inquiry, and the issue is currently pending before our Supreme Court. (See *In re Dezi C.* (2022) 79 Cal.App.5th 769, 774, review granted Sept. 21, 2022, S275578 (*Dezi C.*) [deficient initial inquiry harmless unless record contains information suggesting a reason to believe that the child may be an "Indian child" within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding]; *In re A.C.* (2022) 75 Cal.App.5th 1009, 1011 (*A.C.*) [deficient initial inquiry mandates reversal]; *In re A.C.* (2021) 65 Cal.App.5th 1060, 1069 [deficient initial inquiry harmless unless parent proffers Indian

ancestry on appeal]; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744–745 (*Benjamin M.*) [deficient initial inquiry harmless unless record indicates there was readily obtainable information likely to bear meaningfully upon whether the child is an Indian child]; *K.H.*, *supra*, 84 Cal.App.5th at p. 610 [deficient initial inquiry harmless unless "the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence"].)

In the context of further inquiry pursuant to ICWA, prejudicial error has generally been determined based upon the deficient inquiry's impact on the information necessary for a tribal determination of a child's Indian status. (See, e.g., *In re I.W.* (2009) 180 Cal.App.4th 1517, 1531 [no prejudicial error where "mother does not suggest how the supposed deficiencies she notes would have made a difference given the information that was in the notices"]; *In re Charlotte V.* (2016) 6 Cal.App.5th 51, 58 [no prejudicial error from department's failure to gather additional information from family members]; *In re Breanna S.* (2017) 8 Cal.App.5th 636, 654 [prejudicial error found where reviewing court "[could not] say with any degree of confidence that additional information concerning [a] relative … would not have altered the tribe's evaluation"].)

First, we acknowledge that some courts have concluded a department's deficient inquiry is generally prejudicial when the record is inadequate because of the department's failure to document its inquiries. (See *In re K.R.* (2018) 20 Cal.App.5th 701, 708; see also *In re N.G.* (2018) 27 Cal.App.5th 474, 483.) The courts in *In re Antonio R.* (2022) 76 Cal.App.5th 421, and *In re H.V.* (2022) 75 Cal.App.5th 433, adopted similar standards in relation to the initial inquiry, holding that the department's failure to interview extended family members during its initial ICWA inquiry was prejudicial error and therefore either (1) reversible per se (*H.V.*, at p. 438) or (2) above such a low bar for prejudice that it was reversible in most circumstances (*Antonio R.*, at pp. 435−436).

Next, there is another line of cases that conclude reversal is not warranted where the appellant failed to establish a miscarriage of justice by making an offer of proof or

other affirmative assertion of Indian ancestry on appeal. (See, e.g., *In re A.C.*, *supra*, 65 Cal.App.5th at p. 1069; *In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1388; *In re N.E.* (2008) 160 Cal.App.4th 766, 770; *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1431 [asserted failure to ask father whether he had Indian ancestry was harmless where father did not "make an affirmative representation of Indian heritage" on appeal].) However, this approach to harmless error is not applicable in the present case because mother already made a claim of Indian ancestry in the trial court.

Several appellate courts have held that reversal from an error in inquiry is prejudicial when the record indicates there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child. (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 744–745; *A.C.*, *supra*, 75 Cal.App.5th 1009, 1017 [applying *Benjamin M.* court's standard for prejudice].) In *Benjamin M.*, one parent was not available to report or deny Indian heritage, and the agency never inquired of any of the missing parent's available relatives. (*Benjamin M.*, at pp. 744–745.) The appellate court conditionally reversed to permit the agency to inquire with the father's brother, who was accessible to the agency. (*Benjamin M.*, at pp. 745–746.)

The appellate court reasoned that a parent "cannot always easily obtain the missing information" and the "right at issue in the ICWA context is as much an *Indian tribe's* right to 'a determination' of a child's Indian status as it is a right of any sort of favorable outcome for the litigants already in a dependency case." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 743.) While citing to the decisions from *N.G.* and *K.R.*, it explained that the harmlessness inquiry should be focused on whether the error would uncover "meaningful proof relevant to the determination, whatever the outcome will be" rather than "proof of an actual outcome (that the parent may actually have Indian heritage)." (*Benjamin M.*, at pp. 743–744.) With information about ancestry on the father's side "missing," inquiry with a person sharing the father's ancestry "would likely have shed meaningful light on whether there [wa]s reason to believe Benjamin [wa]s an Indian

child." (*Id*. at p. 744.) Under this approach, continued inquiry is required "where the probability of obtaining meaningful information is reasonable in the context of ICWA." (*Ibid*.)

The court in *Dezi C.* took yet another approach, concluding initial inquiry errors require reversal where a reviewing court would have " 'reason to believe' further inquiry might lead to a different result." (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779, review granted.) The appellate court illustrated an example of its rule as follows: "a reviewing court would have 'reason to believe' further inquiry might lead to a different result if the record indicates that someone reported possible American Indian heritage and the agency never followed up on that information; if the record indicates that the agency never inquired into one of the two parents' heritage *at all* (e.g., *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 740); or if the record indicates that one or both of the parents is adopted and hence their self-reporting of 'no heritage' may not be fully informed (e.g., *A.C.*, *supra*, 75 Cal.App.5th at pp. 1015–1016)." (*Ibid*.)

Another approach articulated by a panel in this district in *K.H.*, *supra*, 84 Cal.App.5th 566 and *In re E.C.* (2022) 85 Cal.App.5th 123 (*E.C.*) explained their decision not to follow the approaches articulated by other appellate courts for determining whether ICWA error requires reversal and concluded that the Supreme Court's decision in *In re A.R.* (2021) 11 Cal.5th 234 supplies the appropriate framework for assessing prejudice in this context. We recognize the difficulty in assessing the effect that obtaining potentially unknown information would have on the juvenile court's ICWA finding. That is why a flexible, case-by-case approach is most appropriate in this context because there are a number of circumstances that can potentially undermine the juvenile court's ICWA determination.

A few of those circumstances are specifically acknowledged by the court in *Dezi C.*, such as where the department fails to follow up on a parent's claim of possible Indian ancestry (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 774, review granted); an inquiry

into the ancestry of one of the child's parents has been completely omitted despite the availability of either the parent or one of their relatives (e.g., *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 740); or a parent's self-reporting of " 'no Indian ancestry' " is not fully informed because they are adopted and estranged from their family (*In re Y.W.* (2021) 70 Cal.App.5th 542, 554).  Although the actual effect of obtaining the information is unknown in these circumstances, there exists a reasonable chance that Indian ancestry will be disclosed upon further inquiry such that the information is meaningful.

The requirement that an appellant demonstrate that the information missing as a result of the inadequate inquiry is meaningful to the determination of the child's Indian status serves both the interests of Indian tribes and dependent children awaiting adoption. Such a limit on conditional reversals promotes the child's interest in avoiding the delay and instability that results from orders for additional inquiry "without any showing whatsoever that the interests protected by the ICWA are implicated in any way." (*In re Rebecca R.*, *supra*, 143 Cal.App.4th 1426, 1431.)  The interests of Indian tribes are also recognized in that a parent's potential lack of knowledge regarding their Indian ancestry will be appropriately considered because a parent's equivocal response can be properly weighed against any other meaningful information that may be available to the department.

Accordingly, the crucial question to resolve for prejudicial error resulting from a department's inadequate inquiry is whether the completion of the missing portion of the inquiry would have affected the juvenile court's determination on the applicability of ICWA.  Reversal is only necessary where it is reasonably probable that the absence of available and meaningful information affected the correctness of the juvenile court's ICWA determination.  (*Benjamin M.*, *supra*, 70 Cal. App.5th at p. 744 [continued inquiry required where the "probability of obtaining meaningful information is reasonable"].)

Contact for further inquiry requires "sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination .…" (§ 224.2,

subd. (e)(2)(C).)  Unlike the formal notice required where there is a "reason to know," contact for further inquiry does not require the sharing of significant and detailed information on the child's grandparents, great-grandparents, and other direct lineal ancestors.  (§ 224.3, subd. (a)(5)(C).)  However, the tribes do require biographical information that is accurate and as complete as possible to make their determinations.

We conclude that the juvenile court's implied finding that the department conducted an adequate further inquiry into mother's Indian ancestry was not supported by substantial evidence with respect to the department's failure to interview the maternal aunt and cousin.  The information provided to the tribes omitted the maternal grandmother and maternal great-grandparents former addresses and places of birth, and it also failed to include the maternal great-grandmother's date and place of death.  As the daughter and granddaughter of the child's maternal grandmother, the aunt and cousin were likely to have information that was omitted from the department's contact with the tribes for further inquiry.  (See *In re E.H.* (2018) 26 Cal.App.5th 1058, 1074−1075 [finding prejudicial error for agency's failure to ask great-grandmother about her father, who was a possible source of Indian heritage].)

In sum, the error in further inquiry is prejudicial under any of the differing standards currently utilized by the Courts of Appeal for harmless error.  Under the "automatic reversal" approach, reversal would clearly be required.  Under *Benjamin M.*, the department's failure to follow up with mother's available extended family means that the department lacked "readily obtainable" information about mother's Indian ancestry, which was "likely to bear meaningfully upon whether" the child was an Indian child. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)  The absence of that information was directly relevant to the juvenile court's ICWA determination because there existed a reasonable chance that the aunt and cousin would have provided information affecting the outcome of the department's further inquiry.

The error would also be prejudicial under *Dezi C.* since mother and maternal grandmother provided the department with reason to believe the child was an Indian child such that further inquiry was required. (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779, review granted.) Finally, the "opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child" was lost because the department failed to inquire of the maternal aunt and cousin. (*K.H.*, *supra*, 84 Cal.App.5th at p. 610.) Under this standard, too, the error here cannot be found harmless. Therefore, we conclude the juvenile court's finding ICWA did not apply was supported by insufficient evidence and limited remand is required.

## DISPOSITION

The finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the department to comply with the inquiry provisions set forth in section 224.2.

If, after the court finds adequate inquiry has been made consistent with the reasoning in this opinion, the court finds ICWA applies, the court shall vacate its existing order and proceed in compliance with ICWA and related California law. If the court finds ICWA does not apply, the finding that ICWA does not apply to the case shall be reinstated.